**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

UNITED STATES OF AMERICA,

      Plaintiff,

      v.                                                          Criminal Action No. 5:13-cr-44

JAVON L. SCOTT,

      Defendant.

**REPORT AND RECOMMENDATION CONCERNING DEFENDANT'S
MOTION TO SUPPRESS**

This matter comes before the Court on Defendant's Motion to Suppress filed on December 4, 2013.[1] The United States filed a Response in Opposition[2] on January 3, 2014, and Defendant filed a Reply to Response[3] on January 8, 2014. The Court held an evidentiary hearing and argument on Defendant's Motion to Suppress on January 9, 2014. Defendant appeared in person and by his counsel Brendan S. Leary. The United States of America (hereinafter "the Government") appeared by Stephen L. Vogrin, in person. The Government presented the testimony of Deputy Matthew Beatty. Defendant presented the testimony of Sergeant Thomas Jarrell and Magistrate Robin Snyder. At the hearing, the Court admitted the following exhibits submitted by the Government: (1) a photograph of an ashtray admitted as Government's Exhibit one; (2) a photograph of a jar lid admitted as Government's Exhibit two; (3) a photograph of a jar of marijuana admitted as

---

[1] Dkt. No. 29.

[2] Dkt. No. 31.

[3] Dkt. No. 35.

1

Government's Exhibit three; (4) a photograph of marijuana residue on Defendant's coffee table admitted as Government's Exhibit four; (5) a photograph of a second ashtray found in Defendant's residence admitted as Government's Exhibit five; (6) a photograph of cash and a cell phone found in Defendant's residence admitted as Government's Exhibit six; (7) a photograph of a plastic bag of cocaine admitted as Government's Exhibit seven; and (8) a photograph of the firearm found in Defendant's residence admitted as Government's Exhibit eight. The Court also admitted Defendant's Exhibit one, which is a copy of the affidavit and complaint for search warrant and the search warrant. No other testimony was taken nor was any other evidence adduced.

## I. INTRODUCTION

### A. Background

On October 1, 2013, Defendant was named in a one count indictment that charged him with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Defendant now moves this Court to suppress evidence seized from his residence.

### B. The Motions

1. Plaintiff's Motion to Suppress Evidence

### C. Recommendation

I recommend Defendant's Motion to Suppress Evidence be **DENIED**. The search warrant described the items to be seized with sufficient particularity, and the search warrant affidavit established probable cause to believe contraband would be found in Defendant's apartment. Although the affidavit alone may not have established probable cause to believe that items related to drug distribution and manufacturing would be found in Defendant's residence, exclusion is not appropriate because the *Leon* good faith exception applies to the facts of this case.

## II. FACTS

On June 27, 2013, law enforcement officers went to Defendant's apartment in order to execute an arrest warrant on an unrelated state charge. When police arrived at the residence, they reportedly detected a strong odor of marijuana coming from inside the apartment. The officers entered Defendant's apartment to arrest him, and while inside, they observed marijuana "roaches" in an ashtray near the front door. They also observed what appeared to be marijuana residue on a table in Defendant's living room. According to the officers, Defendant also advised them that additional marijuana was located in a jar near the television stand. After Defendant was taken into custody, the officers attempted to get permission from Defendant's girlfriend to search the apartment, but she would not consent to a search. Sergeant Thomas Jarrell of the Wellsburg Police Department left the residence to apply for a search warrant for the apartment while the other officers remained at the apartment with Defendant's girlfriend. Sergeant Jarrell prepared an affidavit and complaint for a search warrant and presented it to Brooke County Magistrate Robin Snyder. The affidavit in support of the search warrant provides, in pertinent part:

> Upon surrounding the above residence all officers could smell a pungent odor of burnt marijuana coming from both the front and back door of the residence. Upon making contact with the occupants of the residence and taking [Defendant] into custody the odor of Marijuana became stronger. While taking [Defendant] into custody a ash tray adjacent to the front door in plain view was littered with what is [sic] officer knows as "Marijuana Roaches" that smelled as burnt Marijuana. [Defendant] told Lt Lester Skinner that additional Marijuana could be found on the floor near the entertainment center, which was recovered.
>
> I Sgt Thomas W. Jerrell of the Wellsburg Police Department, having 7 years of law enforcement experience in both criminal and drug investigations. This officer is a certified officer having been trained and graduated from the WV State Police Academy and having a current certification as a law enforcement training from the governor

> committee. This officer has been involved in many investigation involving drugs and knows the smell of burnt Marijuana. This officer knows from his training and experience that persons who are involved in drug crimes use their home, vehicle and property to conceal their crimes. It is this officer [sic] belief that additional items contained in Attachment A will be found at [Defendant's residence].

The property to be seized pursuant to the search warrant was listed on Attachment A, a seven page document attached to the search warrant application. In Attachment A, Sergeant Jarrell listed the following categories of property to be seized: (1) illegal/illicit controlled substances that would constitute a violation of Chapter 60A, Article 4, Chapter 401 of the WV Code; (2) paraphernalia, defined as any device, item or piece of equipment used to produce, conceal, package for sale, package for transport and consume illegal/illicit controlled substances; (3) any substance, product, equipment, and property that would constitute a methamphetamine laboratory; (4) written documents including log books, ledgers, notebooks, pieces of paper, phone books, receipts, and photographs; (5) wireless communications devices; (6) electronic data storage devices including hardware, software, computer related documentation, passwords and data security devices; (7) dangerous weapons as defined by Chapter 61, Article 7, Section 2 and all firearms that would constitute a violation of federal law; (8) property and currency including all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance; and (9) any substance, item, product, or property that would constitute a violation of the WV State Code. Magistrate Snyder issued the search warrant for Defendant's apartment. During the execution of the search warrant, Deputy Matthew Beatty of the Brooke County Sheriff's Department discovered a Colt .357 Magnum revolver in a bedroom closet. In addition to the firearm, officers seized the following items from Defendant's apartment: a jar of marijuana, marijuana roaches, ibuprofen pills, approximately 20 grams of cocaine, a quantity of blue

pills, three cell phones, and $680 in cash.

## III. MOTION TO SUPPRESS EVIDENCE

*A. Contentions of the Parties*

Defendant contends that the search warrant violated the Fourth Amendment because it was so "extremely grand in scope" that it did not particularly describe the things to be seized and therefore constituted an impermissible general warrant. Defendant also contends that the *Leon* good faith exception does not apply because the warrant was so facially deficient that no reasonably trained officer could have believed it was valid. The United States asserts that the search warrant was not overbroad because it authorized a search for items related to a specific unlawful activity and because the items actually seized from Defendant's apartment were related to the crime at issue. The United States further argues that even if the Court determines that the search warrant was unconstitutionally broad, the *Leon* good faith exception applies such that the firearm should not be suppressed.

*B. Discussion*

*1. Description of Items to Be Seized*

Defendant's primary contention is that the search warrant at issue authorized officers to search for and seize "every illicit item identified in the history of modern criminal justice" even though they merely had probable cause to believe Defendant possessed marijuana. Therefore, Defendant contends that the warrant is so overly broad that it constitutes a general search giving officers unlimited discretion to "search and seize everything from the home but the kitchen sink."

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the

persons or things to be seized." U.S. Const. amend. IV. "The Supreme Court has identified two important purposes underlying the particularity requirement: (1) preventing general searches, and (2) ensuring that the executing officer is able to distinguish between those items which are to be seized and those that are not." *United States v. Dickerson*, 166 F.3d 667, 693 (4th Cir. 1999), *rev'd on other grounds*, 530 U.S. 428 (2000) (citing *Marron v. United States*, 275 U.S. 192, 196 (1927)). "[T]he test for the necessary particularity [of a search warrant] is a pragmatic one: 'The degree of specificity required when describing the goods to be seized may necessarily vary according to the circumstances and type of items involved . . . (T)here is a practical margin of flexibility permitted by the constitutional requirement for particularity in the description of items to be seized.'" *United States v. Torch*, 609 F.2d 1088, 1090 (4th Cir. 1979) (quoting *United States v. Davis*, 542 F.2d 743, 745 (8th Cir. 1976)). Moreover, "the law of this Circuit does allow some discretion to the officers executing a search warrant, so long as the warrant at least minimally 'confines the executing officers' discretion by allowing them to seize only evidence of a particular crime.'" *Dickerson*, 166 F.3d at 694 (quoting *United States v. Fawole*, 785 F.2d 1141, 1144 (4th Cir. 1986)). Additionally, where the items actually seized are reasonably associated with the specific crime being investigated, this is evidence "that the warrant was sufficiently definite so that the agents executing it were able to identify the property sought with reasonable certainty." *Id*. at 694.

Here, while the list of items to be seized is extensive, it is also very narrowly tailored to items and evidence related to drug possession, distribution, and manufacture. Courts routinely uphold search warrants for illegal drug activity with much less particularity. *See, e.g., United States v. Ladd*, 704 F.2d 134, 136 (4th Cir. 1983) ("The instant warrant fully satisfies the particularity requirement. The items to be seized were limited to those relating to 'the smuggling, packing,

distribution and use of controlled substances.' More specificity is not required by the Constitution."); *Dickerson*, 166 F.3d at 694 ("[A] warrant authorizing a search for evidence relating to 'a specific illegal activity,' such as 'narcotics,' or 'theft of fur coats' is sufficiently particular.") (internal citation omitted). As a Court in the District of New Jersey noted in a similar case:

> In other words, one of the major problems with a generic description is that an officer executing the warrant might seize legal items in addition to the contraband. In the case of drugs, this potential does not exist as they are "readily distinguishable" from legal items. For this reason, the Supreme Court has implied that "a less exacting standard of specificity may be applied to the description of contraband." Whether the search warrant particularly specified "cocaine" and "heroin" or simply specified "controlled dangerous substances" would have no effect upon the scope of the search of defendant's property. Law enforcement officers searching the premises for "heroin" or "cocaine" would certainly make an extensive search of the area: drugs can be hidden almost anywhere.

*United States v. Sierra*, 585 F.Supp. 1236, 1240 (D.N.J. May 7, 1984). In this case, the attached affidavit clearly stated that Defendant was being investigated for illegal narcotics possession, and the warrant itself explicitly limited the search to those items relating to narcotics activity, both of which further served to provide the necessary particularity. *See Dickerson*, 166 F.3d at 694-95 (finding warrant, which specified that the items to be seized were associated with the crime of bank robbery was sufficiently particular because "it did not fail to provide the searching officers any guidance whatsoever as to the subject of the search"); *United States v. Washington,* 852 F.2d 803, 805 (4th Cir.1988) (upholding against a particularity challenge a search warrant for the seizure of "heroin, a quantity of drug paraphernalia, papers, notes, bank records, identification of documents, and other items of evidence" because the affidavit attached to the warrant, when read together with the warrant, "adequately specified the items to be seized"). Finally, the officers executing the warrant only seized items reasonably associated with drug activity, which indicates that the warrant

7

was sufficiently limited in scope such that "the executing officer[s] [were] able to distinguish between those items which are to be seized and those that are not."*Dickerson*, 166 F.3d at 693. For all of the foregoing reasons, the undersigned finds that the warrant described the items to be seized with the particularity required by the Fourth Amendment. However, should the Court determine the warrant was not sufficiently particular in describing the items to be seized, it was not so facially defective as to preclude the executing officers' reliance on it, as discussed more fully below.

*2. Probable Cause*

This does not end the inquiry however because "[a]n otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based." 2 LaFave, § 4.6(a), at 236; *see also United States v. Leary*, 846 F.2d 592, 605 (10th Cir. 1988) ("The fourth amendment requires not only that the warrant sufficiently specify the evidence to be seized, but also that the scope of the warrant be limited to the specific areas and things for which there is probable cause to search."). Thus, although framed as a particularity challenge, Defendant's argument is essentially a probable cause challenge because Defendant is arguing that based on Sergeant Jarrell's affidavit, there was no probable cause to search for items related to drug distribution and manufacturing.

Probable cause generally exists "'where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found.'" *United States v. Hodge*, 354 F.3d 305, 309 (4th Cir.2004) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). In reviewing the issuance of a search warrant, "great deference" is to be given to the judicial officer's probable cause determination. *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990). The standard on review is whether substantial evidence supports the

magistrate's decision to issue the warrant. *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984). Thus, the reviewing court does not conduct a *de novo* review of the magistrate's decision. *Id*. The sole question on review is whether, based on the totality of the circumstances, there was "a fair probability that contraband or evidence of a crime" would be found in Defendant's apartment. *Gates*, 462 U.S. at 238. A reviewing court must consider only "the information presented to the magistrate who issued the warrant." *United States v. Wilhelm*, 80 F.3d 116, 118 (4th Cir. 1996).

Here, there is no question that Sergeant Jarrell's affidavit gave Magistrate Snyder probable cause to believe that narcotics would be found inside Defendant's apartment. Thus, the issue is whether the facts known to Magistrate Snyder were sufficient such that a person of reasonable prudence could conclude that evidence of drug distribution and manufacturing would also be found there. In general, courts upholding search warrants in similar circumstances require more than just evidence of narcotics possession. *See, e.g., United States v. Williams,* 548 F.3d 311, 319 (4th Cir. 2008) ("[W]e have upheld warrants to search suspects' residences and even temporary abodes on the basis of (1) evidence of the suspects' involvement in drug trafficking combined with (2) the reasonable suspicion...that drug traffickers store drug-related evidence in their homes."); *United States v. Williams*, 974 F.2d 480 (4th Cir. 1992) (probable cause found where affidavit stated that defendant was found with drug residue, criminal record check revealed seven prior drug related arrests, and defendant "was considered by...City police to be a major importer of [narcotics]"); *United States v. Smith*, 2014 WL 51255 (N.D.W.V. Jan. 7, 2014) (probable cause to search residence for evidence of drug distribution and manufacture where affidavit stated that defendant was found in his house with methamphetamine and that a drug database showed defendant purchased pseudoephedrine twice within the past twenty days). Here, the affidavit contained no additional facts

9

indicating that Defendant was involved in drug trafficking or manufacturing. While the record shows that Sergeant Jarrell in fact knew that Defendant had a prior narcotic distribution conviction, there is no evidence that this information was conveyed to Magistrate Snyder at the time she made her probable cause determination. While the undersigned acknowledges that "[g]reat deference is to be given a magistrate's assessment of the facts when making a determination of probable cause," the affidavit alone does not appear to be sufficient to allow a person of reasonable prudence to conclude that evidence relating to drug distribution or manufacture would be found in Defendant's apartment. However, as noted below, even if parts of the warrant were not support by probable cause, exclusion is not appropriate because the good faith exception applies to the facts of this case.[4]

*3. Leon Good Faith Exception*

Under the *Leon* good faith exception, "evidence obtained from an invalidated search warrant will be suppressed only if 'the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.'" *United States v. Lalor*, 996 F.2d 1578, 1584 (4th Cir. 1993) (quoting *United States v. Leon*, 468 U.S. 897, 926 (1984)). Put another way, a court should not suppress evidence obtained pursuant to a "subsequently invalidated" warrant unless it finds that "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n. 23. "Usually, searches conducted pursuant to a warrant will rarely require any deep inquiry into

---

[4]Additionally, because the warrant was supported by probable cause to search for illegal drugs, the references in the warrant to those items not supported by probable cause may be severed from those items listed in Attachment A that were supported by probable cause and ultimately seized. *See, e.g., United States v. Jacob,* 657 F.2d 49, 52 (4th Cir.1981); *United States v. Alston*, 2009 WL 2421589 (S.D.W. Va. Aug. 6, 2009); 2 Wayne R. LaFave, Search and Seizure § 4.6 (4th ed. 2008) ("[I]t would be harsh medicine indeed if a warrant which was issued on probable cause and which did particularly describe certain items were to be invalidated in toto merely because the affiant and magistrate erred in seeking and permitting a search for other items as well.") (citing *Jacob*).

reasonableness, for a warrant issued by a magistrate normally suffices to establish a law enforcement officer has acted in good faith in conducting the search." *United States v. Perez*, 393 F.3d 457, 461 (4th Cir. 2004) (internal quotation marks and citations omitted). However, the Fourth Circuit has noted "four situations in which an officer's reliance on a search warrant would not be reasonable" such that the good faith exception would not apply:

> (1) the magistrate was misled by information in an affidavit that the officer knew was false or would have known was false except for the officer's reckless disregard of the truth;
>
> (2) the magistrate wholly abandoned his detached and neutral judicial role;
>
> (3) the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and
>
> (4) the warrant was so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid.

*United States v. Hyppolite*, 65 F.3d 1151, 1156 (4th Cir. 1995) (quoting *Leon*, 468 U.S. at 923).

The undersigned finds that none of these circumstances are present here. First, there is no evidence or accusation that Sergeant Jarrell's affidavit included any false or misleading information. Second, there has been no showing that Magistrate Snyder abandoned her role as a detached and neutral arbiter. The record shows that Magistrate Snyder read the affidavit before signing the warrant, and there is no indication that she made her probable cause determination based on anything other than an independent review of the facts. *See United States v. Martin*, 297 F.3d 1308, 1317-18 (11th Cir. 2002) (refusing to find that judge "wholly abandoned his judicial role" where judge "at least read the affidavit (or heard what it contained from [the officer] ) before signing [the warrant]").

Third, the undersigned finds that the affidavit underlying the warrant was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." This inquiry focuses on the officers executing the warrant and "is a less demanding showing than the 'substantial basis' threshold required to prove the existence of probable cause in the first place." *United States v. Bynum*, 293 F.3d 192, 196 (4th Cir. 2002); *United States v. Andrews*, 577 F.3d 231, 238 (4th Cir. 2009) ("In the *Leon* context, we begin with the assumption that there was not a substantial basis for finding probable cause; the only question is whether reliance on a warrant that lacks such a "substantial basis" was nevertheless reasonable."). Here, the affidavit clearly establishes probable cause to believe that narcotics would be found in Defendant's apartment because officers had just discovered marijuana throughout Defendant's living room. Additionally, the affidavit was not based on hearsay, but rather recounted the first-hand observations of the officers on the scene. Thus, even assuming the inference that a drug user may also be a drug trafficker is a weak one, this is not the sort of "bare bones" affidavit that would make the good faith exception inapplicable. *See United States v. Johnson*, 4 Fed.Appx. 169, 172-73 (4th Cir. 2001) ("A 'bare bones' affidavit is one in which an affiant merely recites the conclusions of others...without corroboration or independent investigation of the facts alleged....However, a 'bare bones' affidavit is not one with weak inferences, but rather one without facts from which a judge can determine probable cause."); *United States v. Perez*, 393 F.3d 457, 464 (4th Cir. 2004) (defining a "bare bones" affidavit as one that constitutes a "take-my-word-for-it affidavit" that "states only the affiant's belief that probable cause existed"). This is simply not a case where the affidavit so lacks indicia of probable cause that officers could not have reasonably believed the warrant was valid. *Compare United States v. Wilhelm*, 80 F.3d 116 (declining to apply *Leon* good faith exception because "[u]pholding this

12

warrant would ratify police use of an unknown, unproven informant—with little or no corroboration—to justify searching someone's home"); *and United States v. Lionel McCoy*, 2007 WL 6846832 (D.Md. Oct. 24, 2007) (holding *Leon* good faith exception inapplicable where affidavit "is devoid of any specific evidence suggesting how the place to be searched is related to the criminal activity"); *with United States v. Collins,* 2012 WL 6569534 (N.D.W. Va. Dec. 17, 2012) (applying good faith exception even though warrant contained "weak inference" that suspect was manufacturing drugs because "[the affiant] himself discovered the three marijuana plants that were in pots in the area of Defendant's residence and outbuilding").

Additionally, even if the affidavit alone contained insufficient information for Magistrate Snyder to find probable cause that evidence of drug distribution or manufacturing would be found in Defendant's apartment, Sergeant Jarrell's uncontroverted testimony at the hearing was that he knew from a criminal background check that Defendant had a prior conviction for possession of narcotics with intent to distribute. While the magistrate's probable cause determination must be based only on the information known to her at the time, information known only to the executing officers which *bolsters* the existence of probable cause is properly considered by a reviewing court in determining whether the officers' reliance on the warrant was objectively reasonable. *See United States v. Bynum*, 293 F.3d 192, 198-99 (4th Cir. 2002) ("When, as here, the affidavit itself provides information not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, a court should not refuse to apply the *Leon* good faith exception just because the officer fails to include in that affidavit all of the information known to him supporting a finding of probable cause."); *United States v. McKenzie-Gude*, 671 F.3d 452, 460 (4th Cir. 2011) ("Thus, we believe that *Leon* presents no barrier to holding that the experienced officers in this case, who swore

13

out the affidavit and executed the search, acted with the requisite objective reasonableness when relying on uncontroverted facts known to them but inadvertently not presented to the magistrate."). Here, the information contained in the affidavit, considered in conjunction with the information known to the officers' executing the search warrant, was clearly sufficient to justify an objectively reasonable belief in the existence of probable cause to search Defendant's apartment.

Finally, the undersigned finds that the warrant was not "so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid." In applying this fourth exception, "courts have looked to whether the warrant provided the executing officer with sufficient indication of the task required of him." *United States v. Cisneros-Mayoral*, 129 Fed.Appx. 27, 39 (4th Cir. 2005); *see also United States v. George*, 975 F.2d 72, 77 (2d Cir. 1992) ("[A] warrant not limited in scope to *any crime at all* is so unconstitutionally broad that no reasonably well-trained police officer could believe otherwise.") (emphasis in original). As noted above, the inquiry into the good faith of the executing officers "is objective in nature, depending upon the understanding of a reasonable officer in light of the totality of the circumstances." *Dickerson*, 166 F.3d at 694.

Defendant contends that "given the breadth of this warrant, which contemplates that the officers will search the residence for every item ever associated with any possible crime, no reasonable officer could have believed it was valid." However, as noted above, the warrant is limited to items associated with illegal drug activity and clearly delineates the crime for which Defendant was being investigated. Thus, although detailed, the warrant does not rise to the level of facial deficiency that would preclude the officers' reasonable reliance as to its validity. *See Dickerson* 166 F.3d at 695 (applying Leon good faith exception to an arguably non-particular warrant because the

warrant "did not fail to provide the searching officers any guidance whatsoever as to the subject of the search"). Moreover, Sergeant Jarrell testified that he had used the same attachment listing items to be seized pursuant to a search warrant in the past during a similar drug investigation. *See Leon* 468 U.S. at 925. ("In making this [good faith] determination, all of the circumstances-including whether the warrant application had previously been rejected by a different magistrate-may be considered.") Under the totality of the circumstances, the undersigned finds that the warrant was not so facially defective as to preclude the officers' good faith reliance on its validity in conducting the search.

To summarize, in light of the foregoing, it was objectively reasonable for the officers involved in the search of Defendant's apartment to rely on the search warrant issued by Magistrate Snyder. Accordingly, the undersigned finds that the officers acted in good faith such that "application of the extreme sanction of exclusion is inappropriate." *Leon*, 468 U.S. at 926.

## IV. Recommendation

I recommend Defendant's Motion to Suppress Evidence be **DENIED** because the search warrant in question described the items to be seized with sufficient particularity and because the evidence presented to the magistrate established probable cause to believe illegal narcotics would be found in Defendant's apartment. However, even if the Court were to find the search warrant invalid, the *Leon* good faith exception applies.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted

to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

DATED: January 30, 2014

/s/ *James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE